Lon W. KILGORE, Plaintiff-Respondent,

v.

INDUSTRIAL COMMISSION of Missouri, and Division of Employment Security, and Tri-State Drive-In Theatre, Defendants-Appellants.

No. 7849.

Springfield Court of Appeals, Missouri.

June 7, 1960.

Lloyd G. Poole, Jefferson City, for Industrial Commission of Missouri.

Stewart E. Tatum, Joplin, Harry L. Browne, and Howard F. Sachs, Kansas City, for Tri-State Drive-In Theatre.

Spencer, Fane, Britt, & Browne, Kansas City, of counsel, for appellants.

Daniel J. Leary, Joplin, Jack Eisen, Kansas City, for respondent.

McDOWELL, Judge.

This appeal is from a judgment of the Circuit Court of Jasper County, Missouri, reversing a decision of the Industrial Commission of Missouri denying claimant compensation.

The question to be determined is whether respondent left his work voluntarily without good cause attributable to his work or to his employment as provided in Section 288.-050 RSMo 1949, as amended, 1959 Cumm. Annual Pocket Parts, Vol. 15, V.A.M.S.

Claimant filed an initial claim under the Missouri Division of Employment Security Law December 4, 1958, and, thereafter, claimed benefits through the week ending January 10, 1959. A deputy determined that the claimant was eligible for benefits without disqualification. Employer appealed from that determination on December 22, 1958, contending that claimant had left his work voluntarily without good cause attributable to his work or to his employer. After due notice to the interested parties, the appeal was heard by the referee in Joplin, Missouri, on January 21, 1959. On February 20, 1959, the referee affirmed the determination of the deputy. Application for review was filed by the employer with the Industrial Commission, where the findings of the deputy and referee were reversed. The Commission made the following findings:

"The employer operates a drive-in theatre near Joplin, Missouri. The employer signed an agreement with the Motion Picture Operators' Union Local No. 465 whereby he agreed that the Union would furnish the employer with a projectionist. This procedure was followed and for several years an individual by the name of Rouse worked as the projectionist for the employer on an agreed working schedule of seven nights a week. The employer was informed by Rouse in July of 1958 that for an indefinite period he would only work six days a week. Beginning in July of 1958 and continuing through

December 6, 1958, a relief projectionist (the claimant) was furnished to the employer to work each Saturday night. The employer had no need for more than one projectionist. In December of 1958, the regular projectionist resumed working seven nights a week so that the claimant did not report for work as a relief projectionist.

"The Missouri Employment Security Law provides that a claimant shall be disqualified for waiting week credit or benefits until after he has earned wages equal to ten times his weekly benefit amount if it is found that he left his work voluntarily without good cause attributable to his work or to his employer.

"It is apparent from the evidence that the employer had need for only one projectionist and that under the contract which he had with Local Union No. 465 the Union was obligated to furnish a reliable and satisfactory projectionist at all times. Claimant last worked on December 6, 1958. He did not report for work thereafter as the regular projectionist returned to seven nights a week schedule. Under such circumstances, it is the belief of the Commission that claimant voluntarily left his work as the union, through its agent, authorized the regular projectionist to return to the seven night week and, thereby, withheld the services of the claimant to the employer. The evidence does not show that the claimant's separation or leaving the work was for a good cause attributable to his work or to his employer. Under such circumstances, the Commission finds that the claimant left his work voluntarily on December 6, 1958, without good cause attributable to his work or to his employer."

The cause was appealed to the Circuit Court of Jasper County where it was heard and the judgment of the Industrial Commission reversed. The memorandum opinion of the court is as follows:

"The Court finds that the findings and decision of the Industrial Commission of Missouri in this case are inconsistent with the law and are not supported by competent and substantial evidence.

"The Commission has overlooked the fact that while there was only a one man job involved, that job for a number of months became a two man job with Rouse working a majority of the time and Kilgore working the remainder of the time; also, the Commission either overlooked or failed to consider the undisputed fact that the reason for Kilgore's elimination as an employee was the fact that he refused to be a party to an illegal arrangement proposed by the manager of the Tri-State Drive-In Theatre concerning pay and because he failed to go along with such plan Rouse decided he would work straight time. Whether Rouse took over the work previously performed by Kilgore or whether some other person would have taken it over who was agreeable to the arrangement proposed by the manager of the Tri-State Drive-In Theatre, Kilgore was forced out of work although he was available, ready and willing to work.

"This Court is of the opinion that the Commission erred in its ruling that the business agent of the Union was the agent for the employee. This Court rules that by the Union contract the employer delegated to the Union the selection of its (Tri-State Drive-In Theatre's) employees and that the Union was, in fact, the agent of the employer."

Claimant, Lon W. Kilgore, and Paul R. Rouse were both long time members of Local Union No. 465. Employer, Tri-State Drive-In Theatre, signed an agreement with the Motion Picture Operators' Local No. 465 whereby it was agreed that the Union would furnish employer with a projectionist. Rouse had been filling this job

at the direction of the Union for approximately ten years. In July, 1958, employer was informed by Rouse that for an indefinite time he would work only six days a week. In July, 1958, and continuing through December 6, 1958, a relief projectionist, claimant, was furnished by the Union to work each Saturday night and also worked for periods of three, four and five days during one week while Rouse was off. The evidence shows that employer needed only one projectionist.

Claimant testified that he last worked for Tri-State Drive-In Theatre on the night of December 6th; that he went there some time in July and had worked about seven months in 1958. He gave this testimony:

"Q. And was this regular employment? Did you work so many days a week? A. Well, I worked whenever he wanted me to work.

"Q. Who is he? A. Well, the operator whenever he wanted to lay off."

Witness stated that he worked regularly on each Saturday. He testified:

"Q. What happened that you did not work there the following Saturday, which would have been December 13? A. Mr. Rouse called me and told me he didn't want to lay off. He called me at 9:30 in the morning December 13.

"Q. Did Mr. Rouse call you when you were needed or did someone else call? A. Mr. Rouse wanted me to start to work; he wanted to lay off. Mr. Rouse was to let me know when he wanted off, but he wanted off every Saturday and sometimes he would lay off three, four, five days.

"Q. What did Mr. Rouse tell you on December 6, 1958 about working the following Saturday? A. The following Saturday morning, the 13th, he called me. It wasn't the 6th, the 13th

he called me and told me he was going to work.

"Q. How about the next Saturday, the following Saturday, the 20th, did you report then? A. I was out there— Mr. Wilson had me to go out but he didn't want me to work."

The evidence shows that Wilson was the business agent of the Union and claimant testified that Wilson sent him to see if Rouse was working. He testified that he went out to the theatre on the 20th, at the request of Wilson, to find out if Rouse wanted him to work; that Rouse told him he was working and claimant testified that he did not go out on Saturday, December 27th. He gave this answer: "No, I didn't go out there then. I told him, 'Call the business agent anytime you want me now.' He said, 'Well, I won't use you any more.'"

The witness stated: "When he laid off that is when I was supposed to work, and I did not know unless he told me, sir."

Claimant testified that his working arrangements were handled through the business representative of the Union; that Rouse had asked him to work for him, stating that he was going to lay off on every Saturday and some other days; that he asked Mr. Wilson who said, "That is the thing to do, * * * we have to go through the business agent."

Claimant received his pay checks from Tri-State Theatre up until November 27th; the last two checks he received were paid by Rouse. These checks were for work done November 27th and December 6th. Claimant testified that Walters asked him when he went after his check, "How about me putting all that on Paul Rouse's check and him paying you?" Claimant stated he said, "I don't know, I will see about it and find out." He stated that before he had time to find out they had made the change. The evidence shows that claimant went to the Internal Revenue office to seek information about withholding tax on his pay which made him pay twice. He stated he

told Rouse that it was not right for Rouse to pay him and that Rouse stated "That is the way Walter is going to have it." He said, "It is that or else." I said, "Well, I have got to work, and I worked."

Paul R. Rouse testified that he and claimant, Kilgore, were members of the same Union; that he made arrangements with the Union and Kilgore to work at the Tri-State Drive-In Theatre on a substitute basis; that Kilgore simply took his place while he was off duty with the sanction of the Union's agent and at his discretion. He gave this testimony:

"Q. The reason for Mr. Kilgore's leaving was, in fact, that you told Kilgore that he did not need to come back there any more, that you were back on the job, isn't that right? A. Well, yes. I guess.

"Q. Tell us why Mr. Kilgore didn't continue to work in your place there? A. Well, after this turmoil started out there I just quit taking nights off. I just stopped.

"Q. Well, nights off that was your determination, was it not? A. Yes.

"Q. I mean, nobody told you to take nights off? A. No, it was my own idea.

"Q. You say you quit taking nights off. You wanted to go back on the job yourself on those nights. A. That's right."

Witness stated that he was the man who was given the job by Mr. Wilson of the Union; that Mr. Walters, Manager for Tri-State, had nothing to say about it; that the matter was a union operation, among the union men themselves; that the employer had nothing to say about it. Witness admitted that he received pay from employer for the last two Saturday nights that Kilgore worked and paid the money to Kilgore. He stated he told Mr. Walters, when asked about receiving Kilgore's pay, that it was alright with him.

After Rouse had testified claimant made this statement:

"Then Rouse told me when I said, 'That is not right, we can't do it that way because I have got to report everything,' he said, 'You don't have to report it, just stick it in your pocket.' I said, 'It can't be done that way, I have got to report it.' He said, 'Well, that is it or else.' I said, 'Else what?' 'Or else I will stay in the booth myself.'

"Q. You went ahead and worked then? A. I said, 'O.K., I will work under those conditions.'"

Robert Walters, Manager of Tri-State Drive-In Theatre, identified employer's exhibit (A), which is the working agreement between the employer and Local No. 465 of the Motion Picture Operators' Union, that he and Mr. Wilson had signed. He testified that agreement was in effect at all times during the Kilgore employment. He stated that Mr. Rouse had been the projectionist furnished by the Union for some ten years; that he told witness that he was going to be gone for certain periods of time and that Kilgore would take his place; that under the Union rule he would assume that Rouse was the senior employed member of the local. He stated he was just accommodating the projectionist who wanted some time off; that he could not have prevented the Union from sending any competent man. The witness was asked if he could tell the Referee any further matters in regard to Mr. Kilgore and gave this statement:

"I believe at the outset of the hearing it was said that my contention was that Lon Kilgore voluntarily left the job. I think I have been misunderstood. Well, I will clear that up here at this time. Your Honor, on our Notice of Appeal you will notice that we stated: 'That claimant is not eligible in that he was not employed by Tri-State Drive-In Theatre, but was employed

by the full-time employee on a substitute basis and/or by his union; that said Tri-State did not fire claimant but that regular employee resumed full schedule and claimant knew this to be the arrangement and, therefore, should be disqualified as leaving the work voluntarily and not for a cause attributable to Tri-State.' That is the basis of the appeal and the objective of our hearing here."

■ The rules governing the scope of judicial review in cases of this sort are the same as those applicable in workmen's compensation cases. Wood v. Wagner Electric Corp., 355 Mo. 670, 197 S.W.2d 647; Meyer v. Industrial Commission of Missouri, 240 Mo.App. 1022, 223 S.W.2d 835. In the latter case, the St. Louis Court of Appeals stated, 223 S.W.2d loc. cit. 839:

"It was stated by this court in Moore v. International Shoe Co., Mo.App., 213 S.W.2d 215, 220, that the court upon review '* * * is authorized to determine, upon the whole record, whether the Industrial Commission could reasonably have made its findings and reached its result. Const.Mo.1945, art. V, Sec. 22, Mo.R.S.A.; * * * This does not mean that we are to arrive at our conclusion solely upon a review of the whole evidence and with a total disregard of the fact that the Commission made its final award in favor of the employee, and thereby substitute our judgment on the evidence for that of the administrative tribunal. It is our duty to decide from the whole of the evidence whether the Commission could have reasonably found in favor of the employee as it did. We are not to set aside that finding unless it was clearly contrary to the overwhelming weight of the evidence.' Williams v. International Shoe Co., Mo.App., 213 S.W.2d 657." Union-May-Stern Co. v. Industrial Commission of Missouri, Mo.App., 273 S.W.2d 766, 768 [1];

Const.Mo., 1945, Art. V, Sec. 22, V.A. M.S.

In Groce v. Pyle, Mo.App., 315 S.W.2d 482, 485 [2], the court stated: "On review of questions of fact decided by the Industrial Commission, our inquiry, as that of the circuit court, is limited to whether or not the findings of the Commission are supported by competent and substantial evidence upon the whole record. Const. Art. V, Sec. 22. As stated by our Supreme Court, en Banc, in Kansas City v. Rooney, 363 Mo. 902, 254 S.W.2d 626, loc. cit. 628: 'This "does not mean that the reviewing court may substitute its own judgment on the evidence for that of the administrative tribunal. But it does authorize it to decide whether such tribunal could have reasonably made its findings, and reached its result, upon consideration of all of the evidence before it; and to set aside decisions clearly contrary to the overwhelming weight of the evidence." ' "

It was held in Ashwell v. United States Seed Co., Mo.App., 167 S.W.2d 950, 952 [2, 3], that where the facts are undisputed and appellant introduced no evidence contrary to claimant's evidence that the matter is not purely a question of law. The court stated:

"It frequently happens that there is no testimony in a case other than that of the plaintiff or claimant himself, but if from that testimony two different conclusions or inferences may be drawn as to the ultimate fact at issue, each of such conclusions or inferences being consistent with the testimony, and each inconsistent with the other, it remains for the triers of the facts to determine the issue and draw the inference and it does not become a question of law. The triers of fact, being faced with the witness or witnesses, may believe a part of the testimony and disbelieve another part; or they may draw an inference from the facts different from the inference that the court would draw. * * *"

In 1955 M.L.R., Vol. 20, p. 412, it is stated:

"Also, a reviewing court will not disturb a judgment for damages amply supported by substantial, competent evidence.

"This general doctrine has been applied to reviews of administrative decisions. However, it has been held that such decisions may be set aside, if they are clearly contrary to the overwhelming weight of the evidence."

Thus, in reviewing the findings of the Industrial Commission in the instant case, our inquiry is limited to whether or not the findings of the Commission are supported by competent and substantial evidence upon the whole record. We are authorized to determine upon the whole record whether the Industrial Commission could reasonably have made its findings and reached its result. This does not mean that we are to arrive at our conclusion solely upon the review of the whole evidence and with a total disregard of the fact that the Commission made its final award in favor of the employer and thereby substitute our judgment on the evidence for that of the administrative tribunal. We are not to set aside the findings unless it was clearly contrary to the overwhelming weight of the evidence.

It is first contended by appellants that the Circuit Court erred in reversing findings and conclusions of Industrial Commission because plaintiff left his work voluntarily without discharge by the defendant-employer and quit pursuant to directions of his union agent.

To support this contention Anson v. Fisher Amusement Corp., 254 Minn. 93, 93 N.W.2d 815, and Section 288.050 RSMo 1949, as amended, V.A.M.S., are cited.

Sec. 288.050 RSMo 1949, V.A.M.S., Vol. 15 (1959) Cumm.Annual Pocket Parts, p. 88 reads:

"Notwithstanding the other provisions of this law a claimant shall be disqualified for waiting week credit or benefits until after he has earned wages equal to ten times his weekly benefit amount if the deputy finds

"(1) That he has left his work voluntarily without good cause attributable to his work or to his employer; * * *".

Anson v. Fisher Amusement Corp., supra, was an action in certiorari to review a decision of the commissioner of employment security holding that claimant was not disqualified from benefits under the Employment Security Act of Minnesota, M.S.A. § 268.01 et seq. The question before the court was whether an employee, a non-member of the union local, who resigned from his job in obedience to his instructions from the union business representative because of union seniority regulations, is entitled to unemployment benefits when the employer by a collective-bargaining contract, had agreed that the changes of the employees should be made according to union seniority rule. In this case, as in the case before us, the employer was governed by a collective bargaining agreement with the union. Under the agreement he was bound to employ only those operators affiliated, directly or by permit, with local 219 and the local agreed to furnish competent employees. The contract provided: "All changes of operators shall be made in strict compliance with the laws of Local 219 pertaining to seniority."

Because of this seniority provision, the employer had no control over the selection of the projectionist sent him. If he decided that he did not want the projectionist sent he would report that fact to the union and his objection was conclusively ruled upon by the board of union men. Claimant began his employment at the Campus Theatre, upon being sent there by the local business representative, Frank Schilken, Jr. In accepting the employment, claimant knew that he had no seniority rights and that he was subject to being replaced at any time a member wanted his job. He remained at

the theatre about six months when he was ordered to resign to make room for a member. In compliance with these instructions claimant terminated his services without protest. The termination was in accord with the union seniority regulations and the new operator was accepted without objection by employer. Claimant registered for work at the state employment office and filed a claim for benefits. The deputy determined the claimant was involuntarily separated from his employment, not contributable as misconduct and was not disqualified. This determination was affirmed by the decision of the Appeals Tribunal and its decision, in turn, was adopted by the Commissioner of Employment Security. The case was before the appellate court on review of certiorari. The employer contended that the claimant was disqualified for two reasons: (1) Because he was not available for work as required by the statute, and, (2) Because he voluntarily terminated his employment without good cause attributable to the employer within the meaning of the statute.

The Minnesota statute, M.S.A. § 268.09, provides: "An individual shall be disqualified for benefits: (1) If such individual voluntarily and without good cause attributable to the employer discontinued his employment with such employer * * *".

The Commissioner found that no voluntary separation existed since the business representative of the local ordered him to leave his job and further found that the unemployment was attributable to the employer because of the latter's agreement, as a party to the collective bargaining contract, that the changes of operator were to be made pursuant to union seniority laws. It was held that neither of these contentions of the Commissioner could be sustained under the controlling statutory provisions and the decisions of the courts of Minnesota. The court stated on page 818 [2] of 93 N.W.2d:

"Normally, either the employee has voluntarily terminated his employment, in which case no compensation is paid, or the employer has without good cause deprived the employee of his employment, in which case compensation is paid. In each of these cases, 'fault' may be attached to one party or the other, and the granting or denying of compensation is in keeping with impartial justice."

The court stated on page 819[3] of 93 N.W.2d:

"Whether the separation from the employment is the voluntary or involuntary act of the employee is determined not by the immediate cause or motive for the act but by whether the employee *directly* or *indirectly* exercised a free-will choice and control as to the performance or nonperformance of the act. If the act of employment separation was performed by him directly of his own free will, or indirectly by his act of vesting in another discretionary authority to act in his behalf, the ultimate resulting act is a voluntary one which disqualifies him for compensation. This is likewise true when an employee acts directly in obedience to a representative control which, by his own choice, he has vested in another as his agent.

"No authority need be cited for the statement that a labor union does not contract as an agent of the employer. It is equally clear that a union is the agent of its members."

It was stated by the Minnesota court that the separation was without good cause attributable to the employer because it resulted from circumstances about which the employer could do nothing and which were solely within the control of the employee. The court stated that the result was unavoidable that the employer knew or should have known that plaintiff could be replaced at any time a member sought the job. He had no right to refuse employment on these grounds.

The court quoted from Bridges v. F. H. McGraw & Co., Ky., 302 S.W.2d 109, 112, which stated: " ' * * * When one accepts employment under the collective agreement, he thereby ratifies and accepts its terms, and his rights and his employer's rights are to be measured and adjudged by that contract.' "

The court held that when a member of the union knowingly accepts employment with an employer who is subject to the seniority provisions of a collective bargaining agreement with the union, he thereby ratifies and accepts the terms of the contract, and, subject to those terms, he constitutes the union his bargaining agent, and its acts are his acts and when, upon request of the local's business agent, he resigns his employment so that a member of the local may claim his job, his act of resignation is voluntary and without good cause attributable to the employer.

■ We agree with respondent that the mere fact that an employee leaves his job does not necessarily mean that the act is voluntary. Extraneous factors and surrounding circumstances must be taken into account and where pressure of circumstances compels termination by the employee, then the termination is involuntary.

We do not agree with respondent that he was without employment only because of pressures which were exerted upon him by Rouse and Walters in submission to the new plan of payment which not only put Kilgore at a monetary disadvantage but would make him a party to an illegal arrangement. Respondent refers to the isolated statement in the record made by Rouse that it was "this or else". The record is undisputed that Rouse was the regular employee of appellant placed in the position under the terms of a collective bargaining contract. It is undisputed that the union was the sole authority in furnishing the projectionist to appellant-theatre. There was but one position to be filled and respondent testified that he was working in place of Rouse at Rouse's request and that

he only worked when Rouse wanted to lay off. In other words, it is clear to this court that Rouse had the right to return to work at any time and that respondent recognized that right.

■ Under the evidence the Commission properly held that respondent was a relief projectionist furnished to the employer by the union to work each Saturday night; that the regular projectionist resumed working seven nights a week so that claimant did not report for work as a relief projectionist. Under such circumstances respondent voluntarily left his work as the union, through its agent, authorized the regular projectionist to return to seven nights a week and withheld services of claimant to the employer.

■ We do not agree with the findings of the trial court that the employer, by entering into the union contract, delegated to the union to select his employees and that the union was, in fact, the agent of the employer. We have found no law to support this finding. Following the decision of the Supreme Court of Minnesota, supra, we hold that the findings of the Commission were supported by competent and substantial evidence upon the whole record; that it could have reasonably made its findings and reached its results upon a consideration of all the evidence before it; that its finding and judgment were not contrary to the overwhelming weight of the evidence.

Judgment of the trial court reversed and the judgment of the Industrial Commission ordered affirmed.

STONE, P. J., and RUARK, J., concur.

*On Motion for Rehearing*

RUARK, Judge.

I concurred in the original opinion and I concur in the overruling of the motion for rehearing, because it was the prerogative

of the Commission to determine the facts, and these facts include the question of whether Rouse resumed his regular full employment because he wanted to and this was a termination of claimant's job which was voluntary and without good cause attributable to his work or to his employer, or whether the claimant was *required* to leave the employment against his will because of his refusal to comply with an alleged illegal arrangement. The facts were susceptible of different interpretations, and the interpretation of the Commission, being reasonable and not clearly contrary to the overwhelming weight of the evidence, is binding upon us.

STONE, J., concurs in separate opinion of RUARK, J.