DUBINSKY BROTHERS, INC., a corporation, doing business as Esquire Theatre, Respondent,

v.

INDUSTRIAL COMMISSION OF MISSOURI, by and through its Members, June R. Rose, R. W. Atkeson, and Charles E. Cates, Division of Employment Security of Missouri, by and through its Director, Gordon P. Weir, Appellants,

Kenneth G. Siemers, Defendant.

No. 50099.

Supreme Court of Missouri,

In Banc.

Dec. 9, 1963.

George Schwartz, Jefferson City, for appellant Division of Employment Security.

Lloyd G. Poole, Jefferson City, for appellant Industrial Commission.

Strom & Strom, Elmer A. Strom, Stephen E. Strom, Cape Girardeau, for respondent.

EAGER, Chief Justice.

This case was transferred here by the St. Louis Court of Appeals, one judge deeming its opinion to be contrary to an opinion of this Court. The opinion of the Court of Appeals appears at 365 S.W.2d 275. The case is one involving a judicial review of proceedings under the Employment Security Law, Ch. 288, RSMo 1959, V.A.M.S.[1] One Kenneth Siemers filed two

2. To which revision all statutory citations will refer, since no changes material here have been enacted since the 1949 revision.

claims for unemployment benefits; both were allowed by the deputy (§ 288.070, subd. 2) and by the Appeals Tribunal (§ 288.190). The employer, Dubinsky Bros., Inc., filed an application for review by the Industrial Commission (§ 288.200) which was denied. It then filed its Petition for Review in the Court of Common Pleas of Cape Girardeau County, in accordance with § 288.210, naming the Industrial Commission, the Division of Employment Security and the claimant as defendants. The Commission and the Division answered and contested the review; the claimant did not appear. The Court reversed the prior orders, adjudged that the claimant was not entitled to benefits on either claim, and ordered that if he had been paid, restitution should be made. It assessed the costs against the Commission, the Division, and the claimant. Those two agencies appealed. The claimant did not appeal, not having appeared in the reviewing Court.

The facts are stated in the opinion of the Court of Appeals and we refer thereto for many details. For the convenience of the reader, we state enough facts here to outline the principal issues. The employer owned and operated the Esquire Theatre in Cape Girardeau; it regularly employed two projectionists who belonged to Local 700 of the International Alliance of Theatrical Stage Employees and Moving Picture Operators of the United States and Canada (which we shall designate as the "Union.") From 1947 to September, 1958, the theatre operated on fourteen shifts, two each day for seven days,—1:00 p. m.—6:00 p. m. and 6:00 p. m.—11:00 p. m. The regular projectionists were one Johnson and one Spalding. Under the Union contract the theatre agreed to employ only operators "supplied by the party of the second part" (Union) and it in turn agreed to furnish competent operators; the contract also fixed the operating hours and the allowance of vacations with pay. Johnson, Spalding and Siemers were all members of the Union, though Siemers joined much later than the other two. Until 1956 Johnson and Spalding each worked seven shifts per week, thus splitting the work equally. In 1956 Johnson (the senior projectionist in the Local), who held an outside daytime job, decided to cut down his operating hours, and arranged through the Union to get a substitute for two of his shifts; the Union sent out Siemers, to whom the employer had no objection, and who was also working part time at the Broadway Theatre. Siemers continued working these two shifts until the latter part of September, 1958, when the employer (and the Broadway Theatre also) announced a cut in its schedules, eliminating all matinees except on Saturdays and Sundays, and cutting the total work shifts to nine. Thereupon *at a Union meeting* it was decided that Johnson and Spalding would thereafter split the work at the Esquire fifty-fifty, and that Siemers would be allotted two shifts at the Broadway Theatre, *but would no longer work at the Esquire*. Siemers participated in this meeting and made no protest. Johnson promptly resumed his full allotted work at the Esquire. The employer did *not* participate in these arrangements but accepted them. In his testimony, Siemers admitted that the Union was his agent and also admitted the handling of these assignments as we have related them. He was the "low man" in seniority. The evidence fully established the proposition that the employer had no right to *select* its employees, but only to object if an incompetent man was sent; also, that the Union operated on a seniority basis in making work assignments. Thus Johnson had the right at any time to take back the two shifts which he had permitted Siemers to work. The nature and cause of Siemer's cessation of work on or about September 27, 1958, are the essential questions here.

The second claim, very inconsiderable but nevertheless present for decision, arose from another cessation of work by Siemers at the Esquire Theatre after he had been sent by the Union to take the places, respectively, of Johnson and Spalding during their vacations in June, 1959. He knew

when he went there that the work was for that period only, and that he was acting solely as a replacement for each man, successively. Siemers received no severance pay on any of the occasions mentioned, nor was he notified by the employer in any such case that his work had terminated. In other words, these changes were arranged entirely by the employees and the Union, subject perhaps to a formal statement by the employer that it had no objections.

The record shows certain formalities in connection with the claims with which we are not particularly concerned. Thus, Siemers supposedly sought other work during the periods in question, continued to work part time at the other theatre, and reported his earnings. These things were considered in the allowances made. We gather that Siemers was promptly paid all such allowances, in view of § 288.070, subd. 4. The appellants state here that he has been paid.

The first question presented is whether or not these appellants (the Commission and the Division) had a right of appeal as "aggrieved" parties. The Court of Appeals held that they did, but *only* because the judgment of the trial court assessed costs against them. However, the Court then held that the questions sought to be presented on the merits were moot, because the judgment of the trial court disallowing the claims was final as to the claimant, who had not appealed and in fact had never appeared in that court. Special Judge Clemens dissented, on motion for rehearing, obviously feeling that the appellants were entitled to a full appeal and to a hearing on the merits. The cases he cited will be dealt with later.

Section 288.210 provides for a judicial review; therein it is provided in part: "* * * the director or any other party aggrieved thereby may secure judicial review thereof by commencing an action in the circuit court or court of common pleas * * *. An appeal may be taken from the decision of the circuit court or court

of common pleas in the same manner, but not inconsistent with the provisions of this law as is provided in civil cases."

Basically, the employer-respondent here claims that these appellants could not be "aggrieved," in the sense intended by § 512.020, by a judgment which orders that compensation *not* be paid, Siemers not having appealed. The situation is novel, and no Missouri case actually in point has been cited. Appellants contend that they do have a full right of appeal because: (1) the judgment set aside their official acts; (2) they are necessary defendants in any review proceedings, § 288.210; (3) that they have a recognized, legal interest in all such proceedings, being charged with the administration of the Act and entrusted with the funds created, so that they are entitled to have disputed questions of interpretation resolved; and (4) that the payment of benefits as here, without a charge being permitted against the employers' accounts, tends to deplete the general fund and make more likely an automatic increase in contributions.

The term "aggrieved" has been defined in Schumacher v. Schumacher, Mo.App., 223 S.W.2d 841, 845, as follows: "Generally speaking, a party or person is aggrieved by a judgment, order, or decree whenever it operates prejudicially and directly upon his property, pecuniary, or personal rights." And see American Petroleum Exchange v. Public Service Commission, 238 Mo.App. 92, 176 S.W.2d 533. Thus, there are Missouri authorities which seemingly confine the right of appeal to those parties whose pecuniary or property or personal rights are directly affected. But those cases must be limited to the facts there involved. The appellants cite many cases as sustaining their view, generally; we do not find it necessary to cite or discuss all of them. The American Petroleum Exchange opinion was discussed by this Court in State ex rel. Consumers Service Company v. Public Service Commission, 352 Mo. 905, 180 S.W.2d 40, at loc. cit. 44, where the court said (quoting) in part: "'Under the statute

respecting the right of appeal, we are of [the] opinion that the proper general rule to be applied is that any party to an action or proceeding having an interest *recognized by law* in the subject-matter, which interest is injuriously affected by the judgment, is a party aggrieved within its meaning.' * * * We, therefore, think respondent's contention (and the decision in the American Petroleum Company case) is based upon too narrow a view of the Public Service Commission Act." The ensuing discussion there indicated that the ruling was based upon the peculiar status of proceedings before the Public Service Commission and of reviews therefrom. The quotation states a rule which may not be applicable in all cases. However, administrative agencies have been permitted to appeal in certain instances. In Pugh v. St. Louis Police Relief Ass'n, 237 Mo.App. 922, 179 S.W.2d 927, the association was held to be aggrieved and entitled to appeal as a trustee where the wife of a member sought in a divorce suit to sequester funds credited to her husband; there the sequestration had been allowed and the association had been released by order of the trial court; the individual did not appeal. The Court said, 179 S.W.2d loc. cit. 931: "Not only is appellant a 'party' to the suit, but it is directly affected by the decree of the court which contains orders specifically directed to appellant concerning the funds it holds, which orders it will be required to obey." In Cunningham v. Leimkuehler, Mo.App., 276 S.W.2d 633, a Board of Adjustment (zoning) was allowed to appeal from a Circuit Court order reversing its prior decision, it having been a necessary party. See also: Shelley v. Missouri Commission for the Blind, 309 Mo. 612, 274 S.W. 688, 691–692; Gwaltney v. Missouri Commission for the Blind, 322 Mo. 44, 14 S.W.2d 988 (though the applicability of the last two cases is somewhat impaired here by the fact that the Commission appealed from the allowance of claims). In Carlton v. Division of Employment Security, Mo.App., 246 S.W.2d 388, one of the present appellants was permitted, without discussion, to appeal from the allowance of a claim for unemployment compensation. In Producers Produce Co. v. Industrial Commission, Mo.App., 281 S.W.2d 619, an appeal by the Industrial Commission was considered on the merits, without discussion, both in the Springfield Court of Appeals and later (reversed on other grounds) in this Court, as shown at 365 Mo. 996, 291 S.W.2d 166. There the circuit court had denied the claims, as here.

Both the appellants and Judge Clemens have relied rather strongly upon the case of Krisman v. Unemployment Compensation Commission, 351 Mo. 18, 171 S.W.2d 575. On its facts it has no applicability here, for there a supposed employer appealed from a judgment establishing his liability. It is perhaps applicable in a broad sense because of the following statements, 171 S.W.2d loc. cit. 578: "This Act provides a paternalistic system of protection for the employee, not only for his individual benefit, but for the general welfare. * * * The claimant is not the only person interested in this proceeding. The general public is interested in building up a fund to provide for involuntary unemployment and in seeing that all employers who rightfully belong under the Act are made to comply with its provisions."

More specifically, the Courts of Nebraska, Washington and West Virginia have held, under very similar circumstances, that the Commission or Board standing in the place of our appellants, has a right of appeal. Woodmen of the World Life Ins. Soc. v. Olsen, Commissioner, 141 Neb. 12, 2 N.W.2d 353; In re Foy, 10 Wash.2d 317, 116 P.2d 545; State v. Hix, 132 W.Va. 516, 54 S.E.2d 198. These cases proceed generally upon the theory that, since the Commission is charged with the administration of the law and the protection of the fund, it has a direct interest in seeing that there is a uniform system of interpretation and application, that the funds and accounts be protected against erroneous or unwarranted decisions, and that this is true regardless of the status of the claimant, who may already have been paid and thus have lost all

interest.. Essentially, these cases hold that the Commission may be an "aggrieved" party, even where benefits to the claimant have been denied, and that on such an appeal it is representing the interests of the public, and not of the claimant. The case of In re Mitchell, 220 N.C. 65, 16 S.E.2d 476, cited by respondent, is directly contrary to those last cited. It holds, as our Court of Appeals did in effect, that since the claimant did not appear and appeal there was nothing on the merits before the appellate court; that case was apparently decided on the theory that the Commission was appealing as a sort of trustee for the claimant.

■ The right of the Commission and the Division to appeal may depend, to some extent, on the precise issues involved. We are certainly unwilling to say that they have no right of appeal except as representatives of the interest of the claimant. Nor do we hold that their right of appeal here depends solely upon the judgment for costs. We may assume that in accordance with § 288.070, subd. 4 the benefits allowed were actually paid following the action of the Appeals Tribunal. These would normally be charged to the accounts of claimant's base period employers under the Act. Section 288.100. However, when an allowance of benefits is reversed on review "no employers' account shall be charged with benefits so paid." Section 288.070, subd. 4. Thus, if appellants are not permitted an appeal, or if the trial court's judgment is affirmed, the benefits already paid (subject only to restitution,—a faint hope) would necessarily be charged to the general fund, depleting it pro rata. The Nebraska case discussed above noted this as one basis for the right of appeal; while Nebraska has a so-called "pooled" account, we do not see that this makes any essential difference. All must have a general fund of some sort. And see, also, State v. Hatcher, W.Va., 131 S.E.2d 172, 174. We hold that these appellants do have that kind of direct interest which gives to them an independent right of appeal.

We thus reach the merits of this controversy,—a point not reached by the Court of Appeals. The parties concede that there is little applicable law. In June, 1960, our Springfield Court of Appeals decided the case of Kilgore v. Industrial Commission, Mo.App., 337 S.W.2d 91, 90 A.L.R.2d 825; this opinion was filed after the decision of the Appeals Tribunal in our case but well before the judgment of the trial court; it is the principal Missouri decision for discussion. There the same union contract was involved and the persons concerned were moving picture machine operators. Operator R had long worked seven night shifts per week for the employer in question; he wanted relief for one night a week and the union sent out the claimant K, who continued to work that one shift for approximately five months; at that time R decided to take the shift back, so notified K, and resumed the full work; this he was entitled to do under the union's uniform recognition of seniority, and K made no objection. K did, however, file his claim for unemployment compensation. The ultimate question involved was whether K had "left his work voluntarily without good cause attributable to his work or to his employer * * *." Section 288.050, RSMo 1949, V.A.M.S. It was admitted that these work changes were all handled through the business agent of the local. The Industrial Commission, through its various steps, denied compensation. The Circuit Court reversed, holding that the findings were not supported by competent and substantial evidence and that the Union was the agent of the employer. The Commission, the Division and the employer appealed. After discussing the Minnesota case of Anson v. Fisher Amusement Corp., (1958), 254 Minn. 93, 93 N.W.2d 815, and certain other authorities, the Court of Appeals held: that the Union had the sole right to furnish employees; that K was sent solely as a relief man to work when R wanted to lay off, and that K recognized this; that the Union was the agent of the claimant (and its other members) and when it permitted R to resume the work and "withheld" K's services,

the latter must be deemed to have voluntarily left his work. The Court expressly rejected the holding of the trial court that the *employer* had delegated to the Union the right to select its employees, and had thereby made the Union its agent. In conclusion, the Court held that the findings of the Commission were supported by competent and substantial evidence, and that they could reasonably have been made. We are not concerned here with the Court's references to different inferences which may be drawn from a witness' testimony, nor with the concurring opinion of Judge Ruark on that subject; as we see the record in our case, there are *no* divergent inferences to be drawn from the testimony of the claimant or of any other witness on any essential issue.

 We agree with the conclusions stated in the Kilgore opinion, and we hold that it is applicable here. Appellants say that it should not be applicable because in our case, the employer reduced the total number of work shifts from fourteen to nine, and that this was the cause of Siemers' termination. But here, as in Kilgore, the Union did all the selecting and assigning; the work was considered by it as a two-man job, both before and after the reduction; while the reduction may have been the immediate occasion for Johnson's decision to take his full half of the work, the termination of Siemers was nevertheless directly caused by the Union's decision (and in a meeting where Siemers participated) on the work assignments. In Kilgore the trial court had held that the job had, at least in part, become a two-man job when the claimant K took over one shift. The decision of the Court of Appeals necessarily reversed that holding. We think that the same principle is applicable here, despite the reduction in shifts, for the Esquire work was never considered to be a three-man job because Siemers took over two shifts. He continued to be purely a relief man, and he was *relieved* when Johnson decided to come back.

The case of Anson v. Fisher Amusement Corporation, 254 Minn. 93, 93 N.W.2d 815, and to a considerable extent the cases there cited support our decision. In Anson, supra, the Court said at 93 N.W.2d loc. cit. 819: "If the act of employment separation was performed by him directly of his own free will, or indirectly by his act of vesting in another discretionary authority to act in his behalf, the ultimate resulting act is a voluntary one which disqualifies him for compensation. This is likewise true when an employee acts directly in obedience to a representative control which, by his own choice, he has vested in another as his agent.

"[4, 5] No authority need be cited for the statement that a labor union does not contract as an agent of the employer. It is equally clear that a union is the agent of its members." And see, generally, as asserting the agency of a union for its individual members, Hellesen v. Knaus Truck Lines, Inc., Mo., 370 S.W.2d 341. Appellants cite the case of Kentucky Unemployment Insurance Commission v. American National Bank & Trust Co., Ky., 367 S.W.2d 260, as holding that one who takes a temporary job or one for a specified period, does not leave the employment voluntarily when the job is at an end. The opinion was based upon the fact that the job itself had entirely ceased, and there was not, as here, the element of union assignments to continuing work or jobs. We are not persuaded to a different view by that case.

It seems strange that in the Kilgore case the Commission and Division appealed from a circuit court judgment reversing the Commission and *allowing* compensation, whereas here they appeal from a judgment reversing and *disallowing* compensation. Basically, the same questions are involved (particularly the agency of the Union— whether for the employee or the employer) and the respective positions of the appellants seem wholly inconsistent. If it is claimed that the reduction here of five shifts by the employer creates the distinction, we have already ruled otherwise.

In the usual case of this nature the appellate court merely decides whether the findings of the Commission are supported by competent and substantial evidence upon the whole record, § 288.210, and whether they were authorized by law. Mo.Const. Art. 5, § 22, V.A.M.S. Here, however, there was no conflict in the evidence on any material issue, and no conflicting inferences to be drawn. The question became solely one of law, and the trial court correctly decided the issue as to both claims.

 Appellants insist that the trial court had no power to order restitution of the payments made to the claimant. The employer says that they have no standing to make that contention, not having filed a motion for a new trial. In Seabaugh's Dependents v. Garver Lumber Mfg. Co., Banc, 355 Mo. 1153, 200 S.W.2d 55 (supplemental opinion), the Court held in an appeal from a judgment of the Circuit Court in a Workmen's Compensation matter no motion for new trial was necessary in order to preserve questions of the sufficiency of the evidence. The same principle is applicable in appeals from judgments rendered in review of other administrative agencies and departments, for the reasons stated in Seabaugh. While the exact question here is of a slightly different complexion, it does involve the kind and scope of the judgment to be rendered, as a matter of law and on uncontroverted evidence, in a matter tried to the court. The question lies within the principle of Seabaugh, and a motion for new trial was not necessary.

Section 288.070, subd. 4 provides for the payment of benefits upon affirmance by the appeals tribunal; so far as we find, the Act does not provide for restitution. That section goes on to provide that if the decision is finally reversed, no employer's account shall be charged. The claim here will not be paid from the employer's money (§ 288.070, subd. 4), but the amount will now remain charged to the general fund. The specific order for restitution also seems out of harmony with the scope of review provided in § 288.210. That portion of the Trial Court's judgment ordering restitution to the "Plaintiff-Appellant" (respondent here) by credit or reimbursement, should be eliminated.

We note also that the costs were taxed against the "Defendants-Respondents" (appellants here and the claimant). We agree with the Court of Appeals (365 S.W.2d loc. cit. 279) that costs may not be taxed against the Commission and the Division, since they are representatives of the State. Hartwig-Dischinger Realty Co. v. Unemployment Compensation Commission, Banc, 350 Mo. 690, 168 S.W.2d 78. The judgment should be modified in the two respects just noted; otherwise, it is affirmed as to both claims.

All concur.