Bobbie O'NEAL, Appellant,

v.

MARANATHA VILLAGE, INC., Respondent,

and

Division Of Employment Security, Respondent.

No. SD 29998.

Missouri Court of Appeals, Southern District, Division One.

June 23, 2010.

Craig R. Heidemann and Nathan Duncan, Douglas, Haun & Heidemann, P.C., Bolivar, for Appellant.

Shelly A. Kintzel, Jefferson City, for Respondent.

ROBERT S. BARNEY, Judge.

Bobbie O'Neal ("Claimant") appeals from the Labor and Industrial Relations Commission's ("the Commission") "Order" adopting the decision of the Appeals Tribunal which had determined that Claimant was ineligible for unemployment compensation benefits following her termination from Maranatha Village, Inc. ("Employer").[1] In her sole point relied on, Claimant argues the Commission erred in affirming the decision of the Appeals Tribunal because such a decision was not supported by competent and substantial evidence. We affirm the decision of the Commission.

Claimant began working for Employer on November 17, 2008, as a nurse's aide. She was terminated from her employment on March 17, 2009, due to her failure to complete a certification examination to become a certified nursing assistant. Claimant then filed her initial request for compensation and was notified by the Division that she was "not disqualified" from receiving benefits. Employer then filed a notice of appeal to the Appeals Tribunal and a hearing was held on June 5, 2009. The Appeals Tribunal determined that, due to her failure to complete certain certification requirements, Claimant could not continue in her position with Employer such that she was not "discharged" under the law, but she instead "left work voluntarily [on March 17, 2009,] without good cause attributable to the work or to [Employer]." Accordingly, the Appeals Tribunal reversed the prior decision and found Claimant was disqualified from receiving benefits. Claimant next filed her Application for Review with the Commission on June 23, 2009. Thereafter, the Commission affirmed the decision of the Appeals Tribunal and Claimant filed a letter requesting reconsideration of the decision. This request for reconsideration was denied by the Commission on August 5, 2009. This timely appeal by Claimant followed.

In her sole point relied on, Claimant urges Commission error in its affirmance of the Appeals Tribunal's decision disqualifying her from receiving benefits. Specifically, she asserts such a decision was contrary to the evidence

in that Missouri law did not require [Claimant] to be a certified nurse to

---

1. The Division of Employment Security ("the Division") does not appear in this appeal.

Additionally, it appears that Employer is a "skilled nursing facility" under the laws of this State.

work as a nurse's aide and in that [Claimant's] failure to qualify as a certified nurse had nothing to do with her ability to perform work as a nurse's aid[e] because she was not hired to work as a certified nurse but as a nurse's aide.[2]

This Court's review of the Commission's decision in an unemployment compensation case is governed by both Article 5, Section 18 of the Missouri Constitution and section 288.210[3] of the Missouri statutes. *Ragan v. Fulton State Hosp.*, 188 S.W.3d 473, 474 (Mo.App.2006). In our review, we

> may modify, reverse, remand for rehearing, or set aside the decision of the Commission only where: (1) the Commission acted without or in excess of its powers; (2) the decision was procured by fraud; (3) the facts found by the Commission do not support the award; or (4) there was no sufficient competent evidence in the record to warrant the making of the award.

*Ayers v. Sylvia Thompson Residence Ctr.*, 211 S.W.3d 195, 197–98 (Mo.App.2007); § 288.210. "The findings of the [C]ommission as to the facts, if supported by competent and substantial evidence and in the absence of fraud, shall be conclusive, and the jurisdiction of the appellate court shall be confined to questions of law." § 288.210. " 'We examine the whole record to determine whether there is sufficient competent and substantial evidence to support the award.' " *Weinbaum v. Chick*, 223 S.W.3d 911, 913 (Mo.App.2007) (quoting *Scrivener Oil Co., Inc. v. Div. of Employ. Sec.*, 184 S.W.3d 635, 638 (Mo.App.2006)). We defer to the Commission on the resolution of conflicting evidence regarding a factual issue, the weighing of evidence, and the credibility of witnesses. *Burns v. Labor & Indus. Comm'n*, 845 S.W.2d 553, 554–55 (Mo. banc 1993). Notwithstanding this deference, this Court reviews questions of law *de novo*. *Dixon v. Div. of Empl. Sec.*, 106 S.W.3d 536, 540 (Mo.App.2003).

■ At the hearing before the Appeals Tribunal, Jenni Hall ("Ms. Hall"), Employer's business manager, testified that Claimant was discharged from her employment position because when she was hired she was "notified that she would have to be certified within 120 days and she failed to get that certification and according to [s]tate [r]egulations [employees in her position] cannot work past 120 days without being certified." *See* § 198.082, RSMo Cum.Supp.2003;[4] 19 CSR 30–84.010(6)(H)

---

2. We note that, aside from cases on the standard of review, Claimant fails to cite any cases in her appellate brief which support her argument. " 'The appellant has an obligation to cite appropriate and available precedent if he [or she] expects to prevail, and, if no authority is available to cite, [the appellant] should explain the reason for the absence of citations.' " *Walk v. Breckenridge Edison Dev., L.C.*, 260 S.W.3d 839, 840 (Mo.App. 2008) (quoting *Brown v. Ameristar Casino Kansas City, Inc.*, 211 S.W.3d 145, 148 (Mo. App.2007)). "If the appellant does not cite relevant authority or explain why such authority is unavailable, the appellate court is justified in considering the points abandoned and dismissing the appeal." *Id.* at 841. We have chosen to review Claimant's point *ex gratia*.

3. Unless otherwise stated, all statutory references are to RSMo 2000.

4. Section 198.082, RSMo Cum.Supp.2003, provides:

> 1. Each nursing assistant hired to work in a skilled nursing or intermediate care facility after January 1, 1980, shall have successfully completed a nursing assistant training program approved by the department or shall enroll in and begin the first available approved training program which is scheduled to commence within ninety days of the date of the nursing assistant's employment and which shall be completed within four months of employment. Training programs shall be offered at any facility licensed or approved by the department of health and senior services which is most reasonably

(2007). She related Claimant was required to take certain classes and complete certain tests in order to receive her certification. Ms. Hall also testified that Claimant failed one of the tests and did not complete the certification course. She related that Employer had no choice in terminating Claimant's employment because continuing to employ Claimant would be contrary to state regulations.

Claimant testified that her supervisor informed her on March 17, 2009, that she was being discharged for failing to pass a certification test and that such a failure prevented her from continuing the coursework. She related she was allowed to take the test three times and remained unable to pass it. Claimant testified that she was aware that completing the classes was a requirement of her employment and she stated Employer paid for the classes as well as adjusted Claimant's work schedule accordingly in order to accommodate her class schedule. Further, she admitted that she knew if she failed to receive the required certification she would be fired.

■■■ Section 288.050.1(1), RSMo Cum. Supp.2007, states in pertinent part that:

[n]otwithstanding the other provisions of this law, a claimant shall be disqualified for waiting week credit or benefits until after the claimant has earned wages for work insured pursuant to the unemployment compensation laws of any state

equal to ten times the claimant's weekly benefit amount if the deputy finds:

(1) That the claimant has left work voluntarily without good cause attributable to such work or to the claimant's employer....

"The claimant has the burden of proof with respect to eligibility for benefits." *Miller v. Help At Home, Inc.*, 186 S.W.3d 801, 806 (Mo.App.2006). "Thus, if the receipt of benefits is challenged by the employer, for the employee's voluntarily leaving employment without good cause, the employee has the burden of showing that either he did not leave employment voluntarily, or, that if he did, he did so with good cause." *Id.* Additionally, " '[w]hile the terms that the parties use to describe cessation of an employee's employment may be instructive, the relevant facts and circumstances are controlling.' " *Id.* (quoting *Worley v. Div. of Empl. Sec.*, 978 S.W.2d 480, 483 (Mo.App.1998)). This Court defers to the Commission in such factual determinations, but reviews questions of law *de novo*. *Sartori v. Kohner Props., Inc.*, 277 S.W.3d 879, 885 (Mo.App.2009).

On the issue of whether Claimant voluntarily left her employment, we find this matter is akin to that found in *Bd. of Educ. of the City of St. Louis v. Labor & Indus. Rel. Comm'n*, 633 S.W.2d 126 (Mo. App.1982). In that case, a teacher was hired with a temporary teaching certificate that "allowed her to teach 45 days during the school year." *Id.* at 127. "At the

accessible to the enrollees in each class. The program may be established by the skilled nursing or intermediate care facility, by a professional organization, or by the department, and training shall be given by the personnel of the facility, by a professional organization, by the department, by any community college or by the vocational education department of any high school. 2. As used in this section the term 'nursing assistant' means an employee, including a nurse's aide or an orderly, who is assigned

by a skilled nursing or intermediate care facility to provide or assist in the provision of direct resident health care services under the supervision of a nurse licensed under the nursing practice law,.... This section shall not apply to any person otherwise licensed to perform health care services under the laws of this state. It shall not apply to volunteers or to members of religious or fraternal orders which operate and administer the facility, if such volunteers or members work without compensation.

request of the [Board of Education], the State Board granted [the teacher] a 45 day extension of her temporary certificate;" however, "[a]t the end of . . . 90 days [the teacher] was prohibited from teaching in a public school by [statute] and the Board [of Education] was prohibited from offering her further employment in that school year. . . ." *Id.* After being discharged from her employment, the teacher applied for unemployment compensation benefits and the Board of Education countered by asserting she "was not eligible for unemployment benefits because she had 'voluntarily quit. . . .' " *Id.* After appeals from both sides, the matter made its way to the circuit court which "concluded that it was technically the 'fault' of [the teacher] that she was unemployed, as the word *fault* not only means misconduct, but also includes the 'failure of volition' by an employee in retaining a job." *Id.* at 128. As such, the circuit court found the teacher was disqualified from unemployment benefits. *Bd. of Educ.,* 633 S.W.2d at 128. The teacher appealed. *Id.*

On appeal, noting that this was a case of first impression at the time, the Western District of this Court noted

> at the onset that everyday definitions of such pivotal terms as 'voluntary,' 'discharge' and 'fault' are not easily plugged into a factual situation such as this one to reach consistent results. For example, one could say that the [teacher] here did not leave her job because she 'wanted to,' but only because she was forced to leave by operation of law. In this sense, her leaving was 'involuntary' and she should qualify for benefits. On the other hand, another could say that it was the claimant's 'fault' that she lost her job because she did not have a permanent certificate, and she should therefore be denied benefits.

*Id.* After reviewing Missouri case law as well as case law from other jurisdictions, the reviewing court concluded that the teacher

> left her work 'voluntarily' and is therefore disqualified for benefits under s[ection] 288.050.1(1). [The teacher] accepted her employment with her eyes wideopen, fully aware that she would be unemployed when the 45 day certificate and its extension expired. There is no question that she 'exercised a free-will choice and control' as to the consequences of her actions, and that her leaving was therefore voluntary.

*Id.* at 133. It went on to find that

> [t]he general provision that an employee should not be denied benefits if he becomes unemployed 'through no fault of his own' is also ruled adversely to the [teacher]. Under the rationale in *Neeley* [*v. Indus. Comm'n,* 379 S.W.2d 201 (Mo.App.1964) ], the term fault is not limited to 'conduct of the employee which is blameworthy, culpable, wrongful or worthy of censure, but means a failure of volition.' The failure here was that the [teacher] did not obtain the necessary certification to teach past the 90 days. When [she] took the job she knew of this 'failure' or deficiency in her professional status, and it should have come to no surprise to her that the Board could employ her no longer.

*Id.* Accordingly, the appellate court upheld the decision of the circuit court which denied the teacher's claim for compensation. *Bd. of Educ.,* 633 S.W.2d at 134.

As in *Bd. of Educ.,* there was evidence that Claimant was only permitted to work for Employer for a period of 120 days without having her certified nursing assistant certificate and that if she continued to work for Employer after that period of time, then Employer would be in violation of the statutes and regulations of this

State governing her type of employment. Claimant was aware when she took her position with Employer that her employment was conditioned on her attending the various classes and completing the tests necessary for her to attain her required certification and she failed to complete the certification process despite taking one of the exams on three separate occasions. As in *Bd. of Educ.*, 633 S.W.2d at 133, "[w]hen [C]laimant took the job she knew of this 'failure' or deficiency in her professional status, and it should have come to no surprise to her that [Employer] could employ her no longer." It is clear under this analysis that Claimant left her position with Employer "voluntarily." § 288.050.1(1), RSMo Cum.Supp.2007.

Additionally, Claimant failed to prove she left her employment due to good cause. § 288.050.1(1), RSMo Cum.Supp. 2007. Whether a claimant had good cause to quit, attributable to her employer or work, is a question of law that this Court reviews *de novo*. *Shelby v. Hayward Baker, Inc.*, 128 S.W.3d 164, 170 (Mo.App. 2004). "Good cause" has no precise meaning and it depends on the facts of each individual case. *Id.*

> 'An employee has good cause to quit his employment if his conduct is consistent with what a reasonable person acting in good faith would do in a similar situation. The circumstances motivating an employee to quit must be caused by external pressures so compelling that a reasonably prudent person would be justified in terminating his employment.'

*Wheeler v. Poor Boy Tree Service, Inc.*, 252 S.W.3d 253, 257 (Mo.App.2008) (quoting *Shelby*, 128 S.W.3d at 170). "Conditions which motivate the employee to voluntarily leave 'must be real, not imaginary, substantial, not trifling, and reasonable, not whimsical, and good faith is an essential element.'" *Quik 'N Tasty Foods, Inc.*

*v. Div. of Employ. Sec.*, 17 S.W.3d 620, 626 (Mo.App.2000) (quoting *Hessler v. Labor & Indus. Rel. Comm'n*, 851 S.W.2d 516, 518 (Mo.1993)). The burden of proof to prove good cause is on the claimant. *Wheeler*, 252 S.W.3d at 257–58.

Here, Employer went out of its way to aid Claimant in receiving her certification by paying for her classes and tests as well as re-arranging her work schedule so that she could prepare for and attend those classes. Ms. Hall testified that if Claimant had completed the necessary certification it would have continued to employ her in her same position. As stated in Employer's brief, "Employer should not be required to pay unemployment compensation when it still had work available and was in no way responsible for Claimant being unable to perform that work." Claimant has not met her burden of proving she left her employment for good cause.

Based on the foregoing, it appears to this Court that section 288.050.1(1), RSMo Cum.Supp.2007, is applicable here in denying Claimant's request for compensation benefits in that she "left work voluntarily without good cause attributable to such work or to ... [E]mployer." The Commission's findings were not in error. Point denied.

The order of the Commission denying Claimant's request for benefits is affirmed.

BATES, P.J., and BURRELL, J., concur.