James D. LENTZ, Employee/Appellant,

v.

HOME SECURITY OF AMERICA,
Employer/Respondent,

and

Division of Employment Security,
Respondent/Respondent.

No. ED 96919.

Missouri Court of Appeals,
Eastern District,
Division Three.

Feb. 21, 2012.

Motion for Rehearing and/or Transfer to
Supreme Court Denied April 10, 2012.

Application for Transfer Denied
Oct. 30, 2012.

**2**

Donald E. Kraher, Jr., St. Louis, MO, For Employee/Appellant.

Home Security of America, Inc., Madison, WI, Acting Pro Se, For Employer/Respondent.

Jeannie Desir Mitchell Jefferson City, MO, For Respondent/Respondent.

SHERRI B. SULLIVAN, J.

*Introduction*

James D. Lentz (Employee) appeals from the award of the Labor and Industrial Relations Commission (the Commission) denying him unemployment benefits. We reverse and remand for reinstatement of benefits.

*Factual and Procedural Background*

Employee worked full-time for Home Security of America (Employer) as a master plumber licensed in St. Louis County earning $35 per hour for three and a half years, from June 2007 until he was terminated on December 3, 2010 for not maintaining a valid driver's license. Employee needed a valid driver's license in order to drive the company car to respond to service calls.

On November 19, 2010, John Sweeney (Sweeney), a representative of Employer, learned from Employer's insurance carrier that Employee's driver's license had been suspended. Employee was not aware of this fact. Employee immediately began the process for reinstatement of his driver's license. Employee was told to come in on November 24, 2010 for an assessment and that he would have to complete a Substance Abuse Traffic Offender Program (SATOP) before his driver's license could be reinstated. Employee notified Sweeney of this fact. Employee said that it was going to be financially difficult for him to pay for the SATOP class. On November 22, 2010, Employer gave Employee permission to charge the $175 fee for the SATOP class on the company credit card, repayment of which would be subsequently

deducted from Employee's paychecks. Sweeney testified that he allowed Employee to use the company credit card with the understanding that Employee would only have to take a weekend class before his driver's license could be reinstated. Employee paid for the class using the company credit card on November 22 and 24, 2010.

During the time Employee could not drive the company car to respond to service calls, he worked by pulling permits required for jobs they were doing. Employer and Employee also planned that if a service call required two people, Employee would be assigned as the second person for the job.

On November 24, 2010, the day before Thanksgiving, Employee completed his SATOP assessment, received his evaluation and was informed that he would have to take a four-week SATOP class, pushing the date back on which he would be able to get his license reinstated to January 4, 2011. Employee maintains he relayed this information to Sweeney that same day. Sweeney allowed Employee to make a second payment to SATOP on November 24, 2010 for this longer, more extensive class with the company credit card in the amount of $275.[1] Employer's office was closed Thursday, November 25 and Friday, November 26 for the Thanksgiving holiday, and the weekend followed.

Sweeney testified that he did not learn about the new SATOP schedule information until Monday, November 29, although Employee claims he informed him on November 24. On Friday, December 3, Employee received a letter stating "Effective December 3, 2010 [Employer] has notified you of the decision to terminate your employment." Employee had worked from November 19, 2010 through Friday, December 3, 2010, pulling permits for Employer. On Friday, December 3, the same day he was notified his termination was effective, Employee filed a claim for unemployment benefits. Employer filed a letter of protest on the grounds that Employee failed to maintain a valid driver's license, which was a requirement of the job. Specifically, Employer wrote:

> [Employer] is contesting the unemployment filing by [Employee], with social security number of [xxx-xx-xxxx].
>
> A valid driver's license in good standing is a job requirement for the position previously held by [Employee] as driving to service calls is an essential job responsibility. Our insurance company informed us that [Employee] did not hold a valid driver's license and therefore should not operate any vehicle in relation to his employment with us. After we verified that [Employee] did not hold a valid license and no longer met the job requirements, [Employee]'s employment was terminated.

After an investigation, a deputy for the Missouri Division of Employment Security determined that Employee voluntarily quit without good cause attributable to the work or Employer.

Employee appealed the deputy's determination to the Appeals Tribunal, which after a telephone hearing affirmed the deputy's determination, finding that "all critical events were set in motion by loss of the [driver's] license."

Employee filed an Application for Review of the Appeals Tribunal's decision with the Commission. The Commission, by a vote of 2–1, affirmed and adopted the

---

1. This amount added to the previously loaned $175 equals $450. However, on his Separation Information Request, Employee indicates Employee loaned him $600 for SATOP, plus $90 for the reinstatement fee.

decision of the Appeals Tribunal, finding that it was "fully supported by the competent and substantial evidence on the whole record and it is in accordance with the relevant provisions of the Missouri Employment Security Law." The Commission relied exclusively on the findings and holding set forth in *Board of Educ. of City of St. Louis v. Labor and Indus. Relations Com'n*, 633 S.W.2d 126, 131 (Mo.App. W.D. 1982) in stating:

> The first issue is whether this is a quit or a discharge, noting all critical events were set in motion by the loss of the driver's license. In [Board of Education], the Court held a claimant that fails to renew a temporary teaching certificate left work voluntarily and was not unemployed through no fault of her own. By this reasoning, this separation was a voluntary quit. The second issue is whether the quit was with good cause attributable to the work or to the employer. Through no fault of the employer the claimant did not maintain a reasonable condition that was clearly essential to being eligible for his job. The Appeals Tribunal concludes quit without good cause.

The dissenting Commissioner found that Employee did not voluntarily quit, distinguishing *Board of Education* from the case at bar. The dissenting opinion found, among other things, that unlike *Board of Education*, Employer was not prohibited by law from continuing to employ Employee; nor was the instant case one where Employee took the job with Employer knowing it would end on a certain date due to his lacking the necessary professional licensure. The dissent noted that, rather, the uncontested evidence shows that "employer held claimant's job for him and found other work for him to do while he got his licensure worked out." The dissent ultimately found that Employer discharged Employee. This appeal follows.

## Point on Appeal

In his point on appeal, Employee maintains that the Commission erred in denying him unemployment compensation, because there was not sufficient competent evidence in the record to warrant its finding that he voluntarily quit his job.

## Standard of Review

■ We will uphold the award of the Commission if there is sufficient competent and substantial evidence to support the award. *Berwin v. Lindenwood Female College*, 205 S.W.3d 291, 294 (Mo. App. E.D.2006); *Hampton v. Big Boy Steel Erection*, 121 S.W.3d 220, 222–23 (Mo.banc 2003). We defer to the Commission's determinations regarding weight of the evidence and the credibility of witnesses. *Berwin*, 205 S.W.3d at 294.

■ We will affirm a factual determination by the Commission as to whether an employee voluntarily left his employ or was discharged if it is supported by competent and substantial evidence on the record as a whole. *Sokol v. Labor & Industrial Relations Commission*, 946 S.W.2d 20, 24 (Mo.App. W.D.1997); *Chilton v. Labor & Indus. Relations Comm'n*, 805 S.W.2d 722, 723 (Mo.App. E.D.1991). We will, however, engage in a *de novo* review of whether the facts found by the Commission can, as a matter of law, be considered to constitute a voluntary departure from employment. *Sokol*, 946 S.W.2d at 24; *Haynes v. Unemployment Compensation Comm'n*, 353 Mo. 540, 183 S.W.2d 77 (1944).

## Discussion

■ It is Missouri's declared public policy to set aside unemployment reserves for the benefit of individuals unemployed through no fault of their own. Section

288.020.1.[2] The provisions of Section 288.020 *et seq.* are intended to be construed liberally to accomplish the State's public policy. Section 288.020.2. To execute this policy, "[d]isqualifying provisions are construed strictly against the disallowance of benefits." *St. John's Mercy Health System v. Div. of Employment Sec.,* 273 S.W.3d 510, 514 (Mo.banc 2009).

 Unemployment compensation can be denied if the Commission finds that the claimant voluntarily quit without good cause attributable to the work or employer. Section 288.050.1(1). The voluntary quit provision in section 288.050.1 is one that is to be strictly and narrowly construed in favor of finding an employee entitled to compensation. *Moore v. Swisher Mower & Machine Co.,* 49 S.W.3d 731, 739 (Mo.App. E.D.2001); *Sokol,* 946 S.W.2d at 23. An employee will not be held to have left work voluntarily when the employer decides to end the employment relationship. *Sokol,* 946 S.W.2d at 24–26.

██ In the instant case, the Commission found that Employee voluntarily quit his job because he failed to maintain a valid driver's license as required for the position. We consider the Commission's factual finding that Employee voluntarily quit his three-and-a-half year position as master plumber with Employer because he failed to maintain a valid driver's license to be against the weight of the evidence. Employer did not terminate Employee the day Employer learned that Employee's driver's license was not valid, *i.e.,* November 19, 2010; Employer did not terminate Employee's employment until December 3, 2010. During this period of time between November 19 and December 3, Employee, with the assistance of Employer, took all the necessary steps required by the State of Missouri to get his license reinstated. Employer made no move to terminate Employee during this time. Therefore, Employer's stated reason in its letter of protest that, "After we verified that [Employee] did not hold a valid license and no longer met the job requirements, [Employee]'s employment was terminated" is not true. Rather, Employer accommodated Employee's situation by having him perform tasks not requiring a valid driver's license, such as pulling permits for service calls, and being available to serve as a second person to a journeyman on service calls. Employee was the only master plumber on staff, and thus the only one legally permitted to pull permits and perform if a master plumber was needed on a jobsite. Employer also allowed Employee to use its credit card to pay for the reinstatement SATOP classes. It was only when Employer learned it would take four weeks, rather than a weekend, for Employee to reinstate his driver's license that Employer decided to terminate his employment. Therefore, the stated factual reason that Employee voluntarily quit because he failed to maintain a valid driver's license is against the weight of the evidence in the record.

██ Not only do we find the above factual finding of the Commission to be against the weight of the evidence, but also that the facts found by the Commission cannot as a matter of law be considered to constitute a voluntary departure from employment. *Sokol,* 946 S.W.2d at 24. The Appeals Tribunal's decision, adopted by the Commission, stated:

> The first issue is whether this is a quit or a discharge, noting all critical events were set in motion by the loss of the driver's license. In [Board of Education] the Court held a claimant that fails to renew a temporary teaching cer-

---

**2.** All statutory references are to RSMo 2006, unless otherwise indicated.

tificate left work voluntarily and was not unemployed through no fault of her own. By this reasoning, this separation was a voluntary quit. The second issue is whether the quit was with good cause attributable to the work or to the employer. Through no fault of the employer the claimant did not maintain a reasonable condition that was clearly essential to being eligible for his job. The Appeals Tribunal concludes quit without good cause.

We find *Board of Education* to be distinguishable from the case at bar. In it, a teacher who held a temporary teaching certificate failed to obtain permanent certification. A teacher holding temporary certification was permitted by law to teach only 90 days. The teacher's employment ceased at the expiration of those 90 days. She then sought unemployment benefits. Her application was denied on the basis that the termination was voluntary in that she failed to obtain the necessary certification that would have permitted her to teach beyond the 90–day period. The court held, under those circumstances, she left her work "voluntarily" and did not become unemployed "through no fault" of her own. *Board of Education*, 633 S.W.2d at 133.

Unlike in *Board of Education*, 633 S.W.2d at 133, Employer was not prohibited by law from continuing to employ Employee. Employee did not hold a temporary master plumber's license. He was qualified to perform his job as a master plumber. This is not a case where Employee took the job knowing it would end on a certain date due to his lacking a professional license or qualifications. Further, Employee did not fail to do anything to have his driver's license reinstated once it was discovered by both him and Employer to be suspended. Employer and Employee worked together to take the necessary steps to get his driver's license reinstated with the understanding that meanwhile, Employee would stay on as a master plumber but just not drive to service calls. Employer even offered to pay for his reinstatement classes. During this time, Employee neither lost any qualifications as a licensed master plumber nor did he fail to do anything to re-obtain his driver's license. Rather, once it was determined that it would take 3–½ weeks longer than Employer anticipated to get his license reinstated, Employer decided to terminate Employee. Nothing else had changed between the time of discovery of the suspended license and the time Employer decided to terminate Employee than the time it would take to get his license reinstated. Employer exercised discretion as to whether to continue to employ Employee and decided it was not worth it where his reinstatement classes would take longer than expected. The decision was well within Employer's rights. These circumstances take this case out of the ambit of *Board of Education*'s holding.

■ Employer discharged Employee. In Missouri, "an employee is deemed to have left work voluntarily when he leaves of his own accord as opposed to being discharged, dismissed or subjected to lay off by his employer." *Miller v. Help At Home, Inc.*, 186 S.W.3d 801, 806 (Mo.App. W.D.2006). Employee wanted to continue to work for Employer. As soon as he learned of his license suspension, he did everything necessary to address the problem. Employee went to reinstatement classes. When his license was renewed, Employee approached Employer about going back to work. There is no evidence that the work separation in this case was the result of Employee's own choice or volition. See *Difatta–Wheaton v. Dolphin Capital Corp.*, 271 S.W.3d 594, 598 (Mo. banc 2008); *Shields v. Proctor & Gamble*

*Paper Prods. Co.,* 164 S.W.3d 540, 543 (Mo.App. E.D.2005). One leaves work voluntarily, as opposed to being discharged, when he leaves of his own accord and volition. *Moore,* 49 S.W.3d at 737; *Shields,* 164 S.W.3d at 543–44.

Section 288.050.1 provides that benefits will be withheld if the claimant has "left work voluntarily without good cause attributable to such work or to the claimant's employer." "On its face, [Section 288.050.1's] language excluding eligibility applies to those leaving work 'voluntarily,' with the proviso that someone who leaves voluntarily will still be eligible for benefits if that person voluntarily left for good cause stemming from work." *Difatta–Wheaton,* 271 S.W.3d at 598. "Logically, then, those who leave work involuntarily are never disqualified from eligibility under this provision, and of those who do leave voluntarily, some will still be covered under the proviso." *Id.*

Based on the foregoing, Employee's point on appeal is granted.

### Conclusion

The Commission's decision is reversed and this cause is remanded for reinstatement of Employee's unemployment benefits.

ROBERT G. DOWD, JR., P.J., and MARY K. HOFF, J., concur.