

# In the Missouri Court of Appeals
# Eastern District

**DIVISION TWO**

| | | |
|---|---|---|
| JOHN D. WALKER III, | ) | No. ED110346 |
| | ) | |
| Respondent, | ) | Appeal from the Labor and |
| | ) | Industrial Relations Commission |
| vs. | ) | |
| | ) | |
| JOHN J. SMITH MASONRY | ) | |
| COMPANY, | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| DIVISION OF EMPLOYMENT | ) | |
| SECURITY, | ) | |
| | ) | |
| Respondent. | ) | FILED: October 18, 2022 |

Introduction

John J. Smith Masonry Company ("Employer") appeals from the decision of the Labor

and Industrial Relations Commission (the "Commission") awarding John D. Walker ("Walker")

unemployment benefits. In its two points on appeal, Employer argues the Commission erred in

awarding Walker unemployment benefits because the facts found by the Commission do not

support its decision and the record lacks sufficient competent evidence to warrant the decision.

Because the Commission's factual finding that Walker was involuntarily discharged due to a

lack of work was not supported by competent and substantial evidence, the Commission erred in

awarding Walker unemployment benefits. Accordingly, we reverse the Commission's decision.

Factual and Procedural History

The Bricklayers and Allied Craftworkers Local Union No. 1 of Missouri (the "Union") and the Mason Contractors Association of St. Louis (the "MCA") created a summer work program (the "Program") to develop a pool of workers for possible future apprentices in the Union. The Program ran from June 1 through August 31, 2019. Employers could hire Summer Permit Workers ("SPWs") throughout the duration of the Program. Among other requirements, SPWs had to be enrolled in a secondary school, community college, trade school, or university and could not have any prior work experience in the bricklaying industry. The collective bargaining agreement ("CBA") between the Union and MCA applied to SPWs and their employers. The Union granted SPWs temporary work permits effective only until August 31, 2019.

Employer hired Walker, and the Union issued him a temporary work permit. Walker began working for Employer on June 10, 2019, and his last day of employment was August 30, 2019. Walker knew his temporary permit expired on August 31 and that a permit was required for continued employment under the CBA. Employer would have violated the CBA by employing Walker without a permit. When the Program ended, Walker was not actively looking for work because he was enrolled in a trade school, the Missouri Welding Institute.

Walker filed his initial claim for unemployment benefits with the Division of Employment Security ("Division") in April 2020, eight months after his last day of work. Employer objected to Walker's claim and stated that Walker voluntarily left his job with Employer so that he could return to school. A deputy with the Division (the "Deputy") found Walker was not disqualified from receiving unemployment benefits because his "separation was not for misconduct connected with work." Additionally, the Deputy found Walker separated from Employer for "reasons attributable to a lack of work because the [Program] ended." The

2

Deputy determined that Walker was eligible for unemployment benefits. Employer appealed the Deputy's determination, challenging the finding that Walker's separation was due to a lack of work. Employer argued that Walker voluntarily quit to return to school and that work was available had Walker wanted to continue working with Employer beyond the Program. The Appeals Tribunal (the "Tribunal") conducted a telephone hearing on July 20, 2021. Only Walker and John J. Smith ("Smith"), president-owner of Employer, participated as witnesses and both attended the hearing without counsel.

During the brief telephone hearing, Smith testified that Walker voluntarily left to return to school. Walker testified that had Employer offered him an apprenticeship, he would have accepted it and dropped out of school. Walker testified that he told "everyone" that he wanted to continue working with Employer as an apprentice following the Program. When asked to elaborate whom he told, Walker testified he told two co-workers, neither of whom were his foreman, direct supervisor, or Smith. The "Memorandum of Understanding" ("Memorandum") was introduced at the telephone hearing and details the agreement between Employer and the Union regarding SPWs. The Memorandum allows Employer to indenture SPWs as apprentices following the Program but does not explain how that process is initiated. The record does not suggest that either of the two co-workers with whom Walker claimed to have spoken about his desire to continue working as an apprentice had any authority or involvement indenturing apprentices for Employer.

Walker testified that he was not actively looking for work on his last day in the Program because he was enrolled at the Missouri Welding Institute. Further, Walker testified he did not need unemployment benefits prior to April 2020, but that the COVID-19 pandemic caused him to apply for them. Employer testified that Walker never contacted it for additional work as an

apprentice either before or after the Program ended. Walker explained that "it didn't cross [his] mind" to contact Employer for a job because he was looking for welding jobs not bricklaying jobs.

The Tribunal affirmed the Deputy's determination that Walker was not disqualified for benefits because he was discharged from work not for misconduct. In its findings of fact, the Tribunal stated that "[a]lthough the employer believed [Walker] quit and work was still available, the employer admitted that the contract was completed, and his temporary work permit had expired." The Tribunal concluded Walker was effectively discharged due to the completion of his employment contract. Employer then appealed the Tribunal's decision to the Commission, which affirmed the award. This appeal follows.

Points on Appeal

Employer raises two points on appeal challenging the award of unemployment benefits to Walker. Point One argues the facts found by the Commission do not support an award of unemployment benefits because Employer had work available for Walker if he had obtained the required work permit. Because Walker did not obtain the required work permit, his separation from Employer was a voluntary quit, disqualifying him from receiving unemployment benefits. Point Two contends there is insufficient competent evidence in the record to support the Commission's decision in that the record shows Walker knew his position was temporary and contingent upon the Union's issuance of a work permit and that Walker could continue his employment with Employer following completion of the Program only if he obtained the required work permit. Because Walker did not obtain a work permit from the Union, his work separation was a voluntary quit, which disqualified him from receiving unemployment benefits.

4

Section 288.210[1] governs our review of appeals from the Commission's decision awarding or denying unemployment benefits. We may modify, reverse, remand for rehearing, or set aside the decision of the commission on the following grounds and no other:

> (1) That the commission acted without or in excess of its powers;
> (2) That the decision was procured by fraud;
> (3) That the facts found by the commission do not support the award; or
> (4) That there was no sufficient competent evidence in the record to warrant the making of the award. An appeal shall not act as a supersedeas or stay unless the commission shall so order.

Section 288.210; Ekres v. Div. of Emp. Sec., 641 S.W.3d 411, 416 (Mo. App. W.D. 2022) (citing 417 Pet Sitting, LLC v. Div. of Emp. Sec., 616 S.W.3d 350, 358 (Mo. App. W.D. 2020)). We consider the Tribunal's decision to be the Commission's for purposes of our review when the Commission adopts their findings and conclusions as their own. Id. at 417 (citing Ashford v. Div. of Emp. Sec., 355 S.W.3d 538, 541 (Mo. App. W.D. 2011)).

Discussion

Employer raises two related points on appeal, both of which collectively argue that the record contains insufficient competent evidence to support the Commission's decision to award benefits because the evidence shows that Walker was not discharged by Employer but voluntarily quit his employment. We address these points together.

"The question of whether an employee left work voluntarily or was discharged is generally a factual determination." Ekres, 641 S.W.3d at 417 (citing Kimble v. Div. of Emp. Sec., 388 S.W.3d 634, 639 (Mo. App. W.D. 2013)). "In reviewing the factual findings, this court is to determine whether the Commission, based upon the whole record, could have reasonably made its findings and reached its result." Id. (citing Kimble, 388 S.W.3d at 639). "[T]he

---

[1] All Section reference refer to RSMo (2016), unless otherwise indicated.

standard of review is de novo when the issue is whether the facts found by the Commission can, as a matter of law, be considered to constitute a voluntary departure from employment." Kimble, 388 S.W.3d at 639 (quoting Harris v. Div. of Emp. Sec., 350 S.W.3d 35, 39 (Mo. App. W.D. 2011)). "We will affirm a factual determination by the Commission as to whether an employee voluntarily left his employ or was discharged if it is supported by competent and substantial evidence on the record as a whole." Lentz v. Home Sec. of Am., 380 S.W.3d 1, 4 (Mo. App. E.D. 2012) (internal citations omitted). "The evidence is viewed objectively, 'not in the light most favorable to the decision of the Commission. However, on matters of witness credibility and resolution of conflicting evidence, the appellate court defers to the Commission's determinations.'" Ekres, 641 S.W.3d at 417 (quoting Barron v. Div. of Emp. Sec., 435 S.W.3d 654, 657 (Mo. App. W.D. 2014)). "Whether the award is supported by competent and substantial evidence is judged by examining the evidence in the context of the whole record." Id. (citing 417 Pet Sitting, 616 S.W.3d at 358).

"A claimant leaves work voluntarily when he leaves of his own volition." Valdez v. MVM Sec., Inc., 349 S.W.3d 450, 456 (Mo. App. W.D. 2011) (internal citation omitted). "The Missouri Supreme Court has concluded that 'voluntary' should be given its plain and ordinary meaning: 'proceeding from the will: produced in or by an act of choice.'" Chavis v. Wal-Mart Assoc., Inc., 646 S.W.3d 703, 706 (Mo. App. E.D. 2022) (quoting Difatta-Wheaton v. Dolphin Cap. Corp., 271 S.W.3d 594, 598 (Mo. banc 2008)).

Employer maintains that the Commission's determination that Walker was involuntarily discharged is not supported either by the Commission's own findings of fact or by sufficient competent evidence on the record as a whole. We review the record de novo to determine if

Walker's work separation was an involuntary discharge or voluntary quit. See Kimble, 388 S.W.3d at 639 (quoting Harris, 350 S.W.3d at 39).

The Commission found that Walker was discharged "due to a lack of work due to [his] contract being completed." The record lacks evidence to support this finding. See id. Employer never testified that no work was available, and Walker similarly made no such claim. Walker argues only that even though work was available, it was not offered to him. Indeed, Employer stated in its initial appeal that work was available had Walker remained employed. Critically, however, the CBA prevented Employer from continuing to employ Walker without a work permit. The record is clear that without a work permit, Walker was ineligible to work for Employer, a union shop, regardless of the availability of work. The Commission's findings and conclusions of law lack any discussion or even acknowledgment of this requirement. The record lacks any reasonable explanation or support for a finding that the completion of Walker's temporary contract equated to a lack of available work from Employer. The Commission's finding that Walker was discharged due to a lack of available work simply is not supported by competent and substantial evidence on the record. See Lentz, 380 S.W.3d at 4.

Contrary to the Commission's finding, the record plainly shows Walker's work separation resulted from the expiration of his temporary work permit. Important to our analysis, Missouri courts have held that an employee voluntarily quits their position by failing to obtain or retain a specialized license, permit, or other certification when the employee knew it was required. See O'Neal v. Marantha Village, Inc., 314 S.W.3d 779, 785 (Mo. App. S.D. 2010); Bd. of Educ. of City of St. Louis v. Labor and Indus. Rel. Comm'n, 633 S.W.2d 126, 133 (Mo. App. W.D. 1982). The Commission's decision does not discuss or even acknowledge Walker's

7

failure to obtain the work permit required for him to become indentured and work as an apprentice in Employer's union shop.

In both O'Neal and Bd. of Educ., the claimant accepted a job knowing that a specialized license was required. See O'Neal, 314 S.W.3d at 785 (citing Bd. of Educ., 633 S.W.2d at 133). Additionally, the employer in both cases would have violated the law by continuing to employ the claimant without the required license. See id. In Bd. of Educ., a teacher failed to obtain a permanent teaching certification before the expiration of her temporary certification. Bd. of Educ., 633 S.W.2d at 133. Her temporary certification permitted her to teach for only ninety days. Id. The teacher's employment ceased after ninety days when she did not obtain a permanent teaching certification and she then sought unemployment benefits. Id. Bd. of Educ. affirmed the Commission's denial of unemployment benefits, holding the claimant's separation was voluntary because she did not take the necessary steps to obtain the required license, despite her knowledge that failure to acquire the requisite license would result in termination. Id.

Similarly, we find instructive other cases in which Missouri courts have applied the same rationale as in O'Neal and Bd. of Educ. to find a claimant did ***not*** voluntarily quit. See, e.g., Ekres, 641 S.W.3d at 419; Lentz, 380 S.W.3d at 6; Valdez, 349 S.W.3d at 459. Ekres held that the Commission's finding that the claimant no longer met a condition of her employment after moving out-of-state to work remotely did not support a conclusion that the claimant voluntarily quit her employment. Ekres, 641 S.W.3d at 419. In finding the claimant was discharged, the Western District distinguished the facts from those in O'Neal and Bd. of Educ., noting that those claimants knew that their respective certifications were required for continued employment and "the employers, by continuing to employ both claimants, would have violated state laws[.]" Id. Neither of those factors were present in Ekres. Id.

8

In Lentz, the employer terminated the claimant, a plumber, after he lost his driver's license. Lentz, 380 S.W.3d at 2–4. The claimant was assigned to work in the office pulling work permits while his driver's license was revoked. Id. Although the claimant took the necessary steps to reinstate his license, doing so took longer than the employer expected, and the employer terminated him. Id. at 3. The employer argued the claimant voluntarily quit because he no longer had a driver's license, which was necessary to respond to calls for service, and cited Bd. of Educ. in support. Id. This Court distinguished the claimant's case from Bd. of Educ. finding significant that (1) the employer was not prohibited by law from employing the claimant; (2) the claimant did not take the job knowing that it would end on a certain date because he lacked a driver's license; and (3) the claimant did not fail to take the necessary steps to reacquire his driver's license after it was revoked. Id. at 6. In all of the aforementioned cases, whether or not the claimant at least attempted to obtain the necessary permit, certification, or license was critical to the voluntariness of the separation from employment. See id.; see also Valdez, 349 S.W.3d at 459 (holding claimant did not voluntarily quit when he failed a firearms certification test that was required for employment because he took the necessary steps to renew his certification, despite ultimately failing the test).

Here, the pivotal question is whether Walker was involuntarily discharged or voluntarily quit his position by failing to obtain or retain the work permit that he knew was required for continued employment with Employer. See Ekres, 641 S.W.3d at 419; Lentz, 380 S.W.3d at 6; O'Neal, 314 S.W.3d at 785; Bd. of Educ., 633 S.W.2d at 133. The record shows that Walker knew his employment was temporary and that he was ineligible to work after his temporary permit expired on August 31. See O'Neal, 314 S.W.3d at 785; Bd. of Educ., 633 S.W.2d at 133; see also Ekres, 641 S.W.3d at 420 ("Knowledge that an act could cause the cessation of

9

employment is essential in order to conclude that an employee voluntarily quit their employment."). The record also shows that Employer would have violated the CBA had it continued to employ Walker without a permit. See O'Neal, 314 S.W.3d at 785; Bd. of Educ., 633 S.W.2d at 133. The record reveals that Walker knew a permit was required to continue working for Employer beyond the temporary employment provided through the Program, but lacks any evidence that Walker either tried to acquire a work permit upon the expiration of the Program or requested any assistance of Employer to obtain the required permit. See Lentz, 380 S.W.3d at 6 (noting that a claimant's failure to take steps to reacquire a necessary work permit contributes to a finding that the claimant voluntarily quit); Valdez, 349 S.W.3d at 459 (same); O'Neal, 314 S.W.3d at 785 (same); Bd. of Educ., 633 S.W.2d at 133 (same).

There is no evidence in the record from which the Commission could find that Walker ever attempted to acquire the necessary work permit from the Union. The record lacks any evidence that Walker requested that Employer indenture him as an apprentice and acquire the necessary work permit for him. The record contains no evidence from which the Commission reasonably could find that Employer had any reason to believe Walker was available for an apprenticeship. Notably, Walker claims only that he would have accepted an apprenticeship rather than attend welding school as planned had one been offered. Although Walker testified that he told two co-workers that he wanted to be indentured as an apprentice, neither of these co-workers were Walker's foreman or direct supervisor. The record lacks any evidence that Walker communicated this desire to Smith or any employee involved in the process of indenturing apprentices for Employer. Evidence that Walker expressed his desire for an apprenticeship to two co-workers who lacked authority to offer him an apprenticeship is not competent and substantial evidence that he communicated the same to his Employer. See Ekres, 641 S.W.3d at

10

417 (citing Kimble, 388 S.W.3d at 639). We acknowledge that nothing in the record suggests that Employer could not have offered Walker an apprenticeship absent his request. But in the absence of any such request, we are persuaded it was reasonable for Employer to treat Walker as having voluntarily returned to school as envisioned under the Program. Had Walker told Employer prior to the expiration of the Program that he wanted an apprenticeship, that affirmative step would have forced Employer to either indenture him as an apprentice or reject his request, thereby removing the voluntariness of his separation from employment. Without evidence that Walker requested an apprenticeship from Employer or otherwise attempted to remedy his lack of the required work permit, the evidence in the record does not and cannot support a finding that Walker was discharged by Employer. See id. Rather, the record before us dictates but one factual finding and conclusion of law—that Walker voluntarily left his employment at the end of the Program in order to return to welding school. See Ekres, 641 S.W.3d at 417 (citing Kimble, 388 S.W.3d at 639); see also Chavis, 646 S.W.3d at 706 (citing Difatta-Wheaton, 271 S.W.3d at 598); Valdez, 349 S.W.3d at 456. Reviewing the record as a whole, Walker's silent acquiescence with the intended purpose of the Program—allowing SPWs to return to school—constitutes a voluntary quit. See Ekres, 641 S.W.3d at 417 (citing Kimble, 388 S.W.3d at 639). Accordingly, the Commission's determination that Walker was involuntarily discharged from his employment and thus entitled to unemployment benefits is not supported by sufficient competent evidence. See id. (citing Kimble, 388 S.W.3d at 639). Because the facts found by the Commission do not support the award and there was not sufficient competent evidence in the record to warrant the award of unemployment benefits, we reverse the decision of the Commission. See Section 288.210; Ekres, 641 S.W.3d at 416 (citing 417 Pet Sitting, 616 S.W.3d at 358). Points One and Two are granted.

11

## Conclusion

The decision of the Commission is reversed.

_____
KURT S. ODENWALD, Judge

Lisa P. Page, P.J., concurs.
Thomas C. Clark II, J., concurs.